UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBIN JONES,

        Plaintiff,

  v.                                     CAUSE NO. 3:23-CV-221-DRL-MGG

RON NEAL *et al.*,

        Defendants.

## OPINION AND ORDER

Juwan Jones was brutally killed by another inmate while incarcerated in the Indiana State Prison. His mother, Robin Jones, sues various officers and administrative personnel alleging a number of constitutional violations under 42 U.S.C. § 1983 and several state law claims. Warden Ron Neal, Deputy Warden Dawn Buss, Administrators Jason Nowatzke, William Lessner, Christopher Beal, and Kenneth Gann, and Correctional Officers Crockett, Welch, and Rice (a.k.a. John Does 4 to 6)[1] move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The court grants the motion in part.

## BACKGROUND

The amended complaint paints the following picture accepting its well-pleaded allegations as true for the motion and drawing inferences in the light most favorable to Ms. Jones. Mr. Jones was serving a thirty-year sentence at Indiana State Prison (ISP) in Michigan City, Indiana at the time of the tragic events [16 ¶¶ 1, 27]. On October 14, 2021, Mr. Jones was attacked by another inmate, Charles Johnson [*id.* ¶ 32]. Mr. Johnson was serving a sentence for aggravating battery and illegal possession of a firearm, and had a history of serious violent infractions during his incarceration [*id.* ¶¶ 1, 27].

---

[1] The complaint does not provide first names for Correctional Officers Crockett, Welch, or Rice.

As alleged, ISP suffers from "chronic staffing shortages, security problems, and inadequate medical preparedness" under the management of Defendants Neal, Buss, Nowatzke, Lessner, Beal, and Gann (the Administrative Defendants) [*id.* ¶ 73]. Violent incidents among the inmates are common [*id.* ¶ 73]. Mr. Jones's cell was located "approximately three cell doors or less than twenty feet" from the guards' and nurses' station [*id.* ¶ 30]. ISP Correctional Officers Welch, Crockett, and Rice (Officer Defendants) were "in and out" of the guards' station and "sporadically observing" the tier in the two hours before the assault [*id.* ¶ 32].

Around 3:00 in the afternoon, Mr. Johnson and other inmates congregated outside of Mr. Jones's cell [*id.* ¶¶ 34, 36]. A loud altercation took place between Mr. Jones and the group for roughly fifteen minutes [*id.* ¶ 36]. Mr. Johnson threatened to kill Mr. Jones [*id.*]. Video surveillance shows Mr. Johnson then travel to his cell, retrieve a sharp metal object, and return to Mr. Jones's cell [*id.* ¶¶ 38-41]. Mr. Johnson stabbed Mr. Jones several times in his abdomen and leg and sexually assaulted him [*id.* ¶ 58-60].

Mr. Jones did not receive medical attention for between two and a half and five minutes after he was stabbed [*id.* ¶ 49]. As alleged, prison medical staff were not prepared to treat his stab wounds or properly slow his bleeding when they arrived, so they performed CPR. [*id.* ¶¶ 58-62]. He lost two liters of blood [*id.* ¶ 61]. Emergency medical personnel arrived at 3:23 p.m., and he was transferred to a nearby intensive care unit [*id.* ¶ 63]. Though he received a blood transfusion, Mr. Jones succumbed to his injuries the following day [*id.* ¶¶ 34, 36].

STANDARD

A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the treatment of his allegations as true.

*See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing the jurisdictional requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

DISCUSSION

Ms. Jones alleges various claims in her amended complaint, numbered as counts one to ten. Counts one to six allege federal constitutional violations. Count one alleges a failure to render timely medical attention in violation of Mr. Jones's Eighth Amendment rights. Count two alleges a failure to protect Mr. Jones, also in violation his Eighth Amendment rights. Count three asserts that the defendants failed to intervene in those violations as required by the Eighth Amendment. Count four alleges that Mr. Jones was deprived of his life without due process in violation of his Fourteenth Amendment rights. Count five alleges supervisory liability for unconstitutional customs, practices, or policies that violated Mr. Jones's Eighth Amendment rights. Count six asserts a violation of Ms. Jones's own Fourteen

3

Amendment rights, for the interference in the parent-child relationship between her and her son. These counts are brought under 42 U.S.C. § 1983, which provides a right of action to any person who is deprived "of any rights, privileges, or immunities secured by the Constitution and laws."

Counts seven to ten are supplemental state law claims. Count seven alleges wrongful death. Count eight is a claim for "negligent or willful and wanton conduct." Count nine alleges intentional infliction of emotional distress. Count ten is for negligent infliction of emotional distress. Ms. Jones has also brought an indemnification claim, which is not numbered.

The Administrative and Officer Defendants request dismissal of all claims against them. Ms. Jones also alleged violations by several nurses (Nurse Christina, and two other John Doe Nurses, collectively the Nurse Defendants), though they did not join the motion to dismiss. The court walks through each claim against the Administrative and Officer Defendants in turn.

The court notes at the outset that state survival and wrongful death statutes govern which claims and damages an estate may pursue for § 1983 claims. *See Robertson v. Wegmann*, 436 U.S. 584, 589-90 (1978); *Bass v. Wallenstein*, 769 F.2d 1173, 1189 (7th Cir. 1985). However, state law restrictions do not apply if they are inconsistent with the policies of § 1983. *Robertson*, 436 U.S. at 585. The parties defer discussing how Indiana law handles these matters or analyzing this interaction. Rather than explore these issues on its own, the court addresses the sufficiency of the claims had Mr. Jones lived. *See Gysan v. Francisko*, 965 F.3d 567, 570 (7th Cir. 2020).

    A.  *The Administrative Defendants.*

As Indiana state officials, the Administrative Defendants argue that the Eleventh Amendment immunizes them from the claims brought by Ms. Jones. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against officials in their official capacity . . . should be treated as suits against the State."). "Lawsuits against individuals require personal involvement." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824 (7th Cir. 2022); *see also Hafer*, 502 U.S. at 27 (noting that the distinction between official-capacity suits and individual-

4

capacity suits is more than "a mere pleading device"). Before considering their Eleventh Amendment immunity, the court must determine whether Ms. Jones has stated a plausible claim against the Administrative Defendants under § 1983. *See Powers v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (district court must dismiss official-capacity claims under § 1983 before addressing Eleventh Amendment).

Section 1983 only authorizes suits against persons, not states (or states through their officials). *See* 42 U.S.C. § 1983 ("Every *person* who . . . ." (emphasis added)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 87 (1989). Moreover, a system of vicarious responsibility does not exist for these claims. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). Rather, liability under § 1983 is based on personal responsibility, and high-ranking officials cannot be held liable for damages solely because they oversee operations of a prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks*, 555 F.3d at 596.

To that end, prison officials are not liable "just because they know that violence occurs in prisons and don't do more to prevent it on an institution-wide basis." *Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2012). Thus, supervisors may not "be held liable unless they had some personal involvement in the alleged constitutional deprivation." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). This can be established if supervisory staff "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019).

Accordingly, a § 1983 claim must actually allege an individual's personal involvement in the violation of federal law. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation."). Ms. Jones must plausibly assert that the Administrative Defendants personally directed conduct causing a constitutional violation or that it occurred with their knowledge or consent for her claim to survive a 12(b)(6) motion. *See Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001).

In her amended complaint, the only nonsupervisory conduct Ms. Jones attributes to the Administrative Defendants is a "deliberate indifference to their duty to monitor the prisoners' cell blocks

5

properly, and/or they saw what was happening . . . and they consciously disregarded the serious and known risk" of the attack [16 ¶ 57]. The court ignores the legal conclusions of their "deliberate indifference" and "conscious disregard" in its analysis. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"); *Nat'l Fidelity Life Ins. Co. v. Karagnais*, 811 F.2d 357, 358 (7th Cir. 1987) ("The court . . . is not bound by the nonmoving party's legal characterizations of the facts.").

This alone doesn't plausibly allege their personal involvement. In addition, this allegation is lobbed at "all Defendants" generally, not any specific defendant or even just the Administrative Defendants [*id.* ¶ 57]. This type of boilerplate referencing "all Defendants" collectively is not sufficient to state a claim under federal pleading standards. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, 2021 U.S. App. LEXIS 32721, 3 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing.").

Ms. Jones says the Administrative Defendants were "monitoring the situation on video and other means" while simultaneously claiming that they were "away from their post, asleep, deliberately not paying attention or away from their post" [16 ¶¶ 39,42]. She alleges they "could have prevented Jones's stabbing by Johnson" but for their failure to properly "monitor and supervise security conditions" [16 ¶¶ 45,47]. Ms. Jones does not plausibly allege that the Administrative Defendants actually saw or heard the confrontation, or even anticipated it, just that they could have known it was happening. But a finding of deliberate indifference requires that an individual "respond[ed] unreasonably to a substantial and known risk." *J.H. v. Johnson*, 346 F.3d 788, 792 (7th Cir. 2003). "[T]here is no liability under § 1983 for what a defendant 'should have known.'" *Id.* at 795 (quoting *Pacelli v. DeVito*, 972 F.2d 871, 876 (7th Cir. 1992)).

6

The only other statements of wrongdoing by the Administrative Defendants are that they allowed "chronic staffing shortages, inadequate medical preparedness, and severe security problems," which resulted in a "fail[ure]to protect the inmates" and put Mr. Jones at risk of physical harm [16 ¶¶ 71-73]. Ms. Jones specifies that Defendants Bann and Beale "set policies" in their role as "policymakers" that increased the risk of injury [*id.* ¶ 71]. She at one point alleges that the Officer Defendants committed their deprivations "under the supervision of the Defendants" (in reference to the Administrative Defendants) [*id.* ¶ 42]. The amended complaint succinctly sums up the allegations of misconduct by the Administrative Defendants: "poor supervisory mismanagement" [*id.* ¶ 74]. Whatever label Ms. Jones attempts to use to define this conduct, these are decidedly supervisory and policymaking actions that do not predicate personal liability under § 1983. There is no *respondeat superior* liability in § 1983. *See Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997).

Ms. Jones's reliance on *Monell* to allege liability for negligent customs, policies, or practices by the Administrative Defendants doesn't help. It is true that *Monell* permits municipalities (and their officials through official-capacity suits) to be considered "people" under § 1983 liable for unconstitutional policies and practices. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 699-701 (1978). However, the holding in *Monell* was explicitly limited to local municipalities, not states or state departments. *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005); *see Will*, 491 U.S. at 70 (quoting *Monell*, 436 U.S. at 690 n.54) ("[W]e consequently limited our holding in *Monell* to local government units which are not considered part of the State for Eleventh Amendment purposes."). Moreover, *Monell* liability only extends to constitutional violations caused by a municipality's *official* policy (or unwritten customs), but that presupposes official action, not individual conduct.

Perhaps there was more to be alleged here. Based on what Ms. Jones has alleged, the court cannot plausibly infer that the Administrative Defendants had any personal involvement in these events. All § 1983 claims against the Administrative Defendants are dismissed. Because count five only alleges

7

violations by the Administrative Defendants, and rests on *Monell* supervisory liability regardless, it is dismissed in its entirety.

      B.  *Eighth Amendment Claims for Deliberate Indifference (Counts One, Two, and Three).*

Ms. Jones argues that the Officer Defendants violated several of her son's Eighth Amendment rights. Specifically, she claims that they failed to provide timely medical attention (count one); failed to protect him (count two); and failed to intervene in the constitutional violations (count three).

"The Eighth Amendment, as incorporated by the Due Process Clause of the Fourteenth Amendment, prohibits a state from inflicting cruel and unusual punishment." *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). An Eighth Amendment claim requires more than just an injury; it requires a showing that the injury was the result of cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Courts have held that "deliberate indifference by prison employees to a prisoner's serious illness or injury constitutes cruel and unusual punishment." *Id.* "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 25 (1993)). Under this test, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Prison officials must "take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832-33. But "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant

had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). An "unfortunate random act of violence in a prison . . . does not impose liability on prison officials." *Washington v. LaPorte Cty. Sheriff's Dept.*, 306 F.3d 515, 519 (7th Cir. 2002). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

To establish deliberate indifference, a plaintiff must allege "that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Id.* at 639-40. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Nor does making a "mistake" or exercising "poor judgment" satisfy the deliberate indifference standard. *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018). Even incompetence does not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000).

The Officer Defendants say Ms. Jones has not stated a claim for deliberate indifference. Quite the opposite, they argue that Ms. Jones has actually demonstrated that they were not even aware of the altercation through her allegations that they were either away from their post, asleep, or not paying attention. Ms. Jones responds that the Officer Defendants knew the dangers her son faced if he was left alone and unprotected in his cell because they were aware of the dangerous conditions in the prison. But

9

again generalized awareness of danger isn't enough. Ms. Jones has not stated facts from which it can be concluded that any defendant knew there was a substantial risk of serious harm to her son. She does not claim there was a history between her son and his killer before the attack that took his life, let alone a specific and substantial threat that the Officer Defendants knew about. Rather, she describes only an isolated altercation that turned deadly.

Her amended complaint asserts that Officer Defendants knew generally about the dangerous conditions in the prison and the potential for violence, especially if prisoners were unsupervised or unsecured [16 ¶¶ 90-99], but this conclusion amounts only to a "knowledge of general risks of violence" in the facility, not a particularized and substantial threat to Mr. Jones personally. *Brown*, 398 F.3d at 913. As for this tragic attack, she alleges only that the dispute "should have been noticed by corrections officers" if they were properly doing their jobs [16 ¶ 27]. True as this may be, such failures do not amount to deliberate indifference. *See J.H.*, 346 F.3d at 795. Without more, Ms. Jones has not alleged that Officer Defendants actually knew of the specific risk to her son's life by his attacker and effectively condoned it. As such, Ms. Jones has failed to state a claim for deliberate indifference in violation of her son's Eighth Amendment rights. The Eighth Amendment claims (counts one, two, and three) must be dismissed against the Officer Defendants.

C.  *Fourteenth Amendment Claims (Counts Four and Six).*

Ms. Jones has brought two claims under the Fourteenth Amendment as well. In Count four, she alleges that defendants deprived her son of his life without due process in violation of his Fourteenth Amendment rights [16 ¶¶ 106-114]. She also brings a claim for interference with the parent-child relationship in violation of her own Fourteenth Amendment rights in count six [16 ¶¶ 119-126]. The Officer Defendants did not argue for dismissal of either of the Fourteenth Amendment claims; their motion to dismiss addressed all constitutional violations as Eighth Amendment claims for deliberate indifference. Whether there might be reason to doubt the viability of one, *see Russ v. Watts*, 414 F.3d 783,

10

791 (7th Cir. 2005), the court will not make arguments for the parties. Counts four and six remain against the Officer Defendants past this pleading stage.

D. *State Law Claims (Counts Seven, Eight, Nine, and Ten).*

Prison officers enjoy tort immunity under the Indiana Tort Claims Act (ITCA), except in precise circumstances. *See* Ind. Code § 34-13-3-5. To sue a governmental employee personally, the plaintiff must "allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Indiana Code § 34-13-3-5(c). "Under the [ITCA], there is no remedy against the individual [when] he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014); *Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007) ("[P]rison officers are shielded from liability in their official capacity under the [ITCA]"); *see also* Ind. Code § 34-13-3-5(b) ("A lawsuit alleging that the employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally.").

Merely alleging malice or wantonness in word isn't enough. The complaint "must contain a reasonable factual basis supporting the allegations." Ind. Code § 34-13-3-5(c); *see also Iqbal*, 556 U.S. at 678. The ITCA's purpose is to "ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000). "Because the ITCA is in derogation of the common law, [courts] construe it narrowly against the grant of immunity." *Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001). "The party seeking immunity bears the burden of establishing its conduct comes within the Act." *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 480 (Ind. 2003), *reh'g denied*.

Ms. Jones has asserted state law tort claims of "wrongful death," "negligent or willful and wanton conduct," and intentional and negligent infliction of emotional distress [16 ¶¶ 127-149]. She argues that

11

the ITCA does not bar her claims because she pleads that they acted maliciously, wantonly, and willfully. Defendants respond that they are immune because she failed to provide a reasonable, specific factual basis to that end.

Willful and wanton conduct under the ITCA means either "an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time," or "an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204-05 (Ind. Ct. App. 2011). As a statement of elements, "(1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Id.* The federal deliberate indifference standard and Indiana willful and wanton standard are remarkably similar.

As Ms. Jones notes in her opposition, she has pleaded the legal standard that defendants acted maliciously, willfully, or wantonly in her amended complaint, but she must make this allegation plausible. As discussed, the factual allegations against the Officer Defendants amount to what they "should" have known had they carried out their jobs more attentively [16 ¶ 27]. Similarly, Ms. Jones offers no facts as to policies, actions, or inactions personally attributable to the Administrative Defendants that support any allegation they acted willfully or wantonly. Just as their conduct does not meet the standard for deliberate indifference, it fails to reach it for willful and wanton. Counts seven to ten cannot proceed under the ITCA and are dismissed against the Administrative and Officer Defendants.

E. *Claims Against John Doe Defendants 7 to 10.*

In their motion to dismiss, defendants have also requested dismissal of all claims against John Doe Defendants 7 to 10. Defendants argue that this type of placeholder in a suit is not appropriate in federal court. Ms. Jones responds that John Doe Defendants are specific ISP employees, and that her

amended complaint provides enough identifying information to relate back once their actual identities are confirmed. This is true enough for John Doe Defendants 1 to 6, as Ms. Jones points out in her opposition to the motion to dismiss, but not for John Doe Defendants 7 to 10—and that is all this motion concerns. For these unnamed defendants, Ms. Jones's opposition does not provide more details of their identities or counter the argument that their inclusion is futile at this stage.

In federal court, "the substitution of named individuals for 'John Doe' defendants constitutes a 'change of parties' within Rule 15(c)." *Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996); *see* Fed. R. Civ. P. 15(c)(1). If Ms. Jones discovers the identities of the unnamed defendants, she will need to amend her complaint, subject to the relevant statute of limitations. The inclusion of anonymous placeholder defendants "does not open the door to relation back . . . nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997); *see also Billman v. Indiana Dept. of Corr.*, 56 F.3d 785, 790 (7th Cir. 1995) ("[E]ventually, the plaintiff must discover the names of the defendants in order to serve summonses on them and thus establish the court's personal jurisdiction."). The court dismisses all claims against John Does 7 to 10 without prejudice. *See Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 566 (7th Cir. 1996); *Troya v. Wilson*, 807 F. Appx. 556, 559 (7th Cir. 2020).

F.  *Indemnification Claim*

Ms. Jones's final claim is for indemnification, alleging that Indiana law requires ISP to indemnify all defendants [16 ¶¶ 150-53]. Defendants' motion requests dismissal of all counts in rote fashion. However, it does not specifically request dismissal of the indemnification claim or address it substantively at all. Whether Ms. Jones ultimately has such a cause of action, the court does not dismiss it today.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the motion to dismiss [20]. The court DISMISSES all counts against the Administrative Defendants (Warden Neal, Deputy Warden Buss, and Administrators Nowatzke, Lessner, Beal, and Gann). The court DISMISSES all counts other

than counts four and six and the claim for indemnification against the Officer Defendants (Correctional Officers Crockett, Welch, and Rice). The court DISMISSES all claims against John Does 7 to 10 without prejudice. Because the Nurse Defendants are not parties to the motion to the dismiss, all claims also remain against them.

    SO ORDERED.

March 20, 2024                                                s/ *Damon R. Leichty*
                                                                         Judge, United States District Court