UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBIN JONES,

        Plaintiff,

v.

RON NEAL *et al.*,

        Defendant.

CAUSE NO. 3:23-CV-221 DRL-SJF

## OPINION AND ORDER

Juwan Jones was tragically killed by an inmate while incarcerated in Indiana State Prison. His mother, Robin Jones, sued various prison personnel alleging constitutional violations under 42 U.S.C. § 1983 and various state law claims. The court dismissed all but counts four and six against Correctional Officers Crockett, Welch, and Rice (a.k.a. John Does 4, 5, and 6),[1] claims against the Nurse Defendants, and the claim for indemnification against the prison. Now, the officers move for judgment on the pleadings under Rule 12(c) for the remaining counts against them. The court grants the motion and enters judgment for the officers.

## BACKGROUND

The amended complaint provides the following facts, taking its well-pleaded allegations as true and drawing inferences in the light most favorable to Ms. Jones. Juwan Jones was an adult serving a 30-year sentence at the Indiana State Prison in Michigan City, Indiana [16 ¶ 1, 27]. He was fatally stabbed on October 14, 2021 by another inmate named Charles Johnson, who had a history of violence inside and outside of prison [*id.* ¶ 1, 26].

Correctional Officers Crockett, Welch, and Rice were responsible for the safety and security of the tier where Mr. Jones resided [*id.* ¶ 20-22]. On that day, they monitored from the guard station

---

[1] The amended complaint does not provide first names for Correctional Officers Crockett, Welch, and Rice.

less than twenty feet from Mr. Jones's cell but only observed the tier "sporadically" in the two hours before the attack [*id.* ¶ 30, 32].

From about 2:55-3:09 p.m., Mr. Johnson and other inmates gathered outside Mr. Jones's cell, and an argument broke out during which Mr. Johnson loudly threatened to kill him [*id.* ¶ 33-34, 36]. In the ensuing minutes, Mr. Johnson retrieved a sharp object from his own cell, returned, stabbed Mr. Jones in his abdomen and leg, and sexually assaulted him [*id.* ¶ 38, 40-41, 58, 69]. Mr. Jones and other inmates yelled for help while he lost blood [*id.* ¶ 51].

The correctional officers "willfully failed to monitor" these events and "were either away from their post, asleep, [or] deliberately not paying attention" [*id.* ¶ 42-43]. It was between two and a half and five minutes before Mr. Jones received medical attention [*id.* ¶ 49]. As a result, they failed to "intervene[] or t[ake] any action" to prevent the attack [*id.* ¶ 39, 43-45].

Mr. Jones alleges that medical staff were unprepared to treat his injuries or slow the bleeding, and he lost two liters of blood [*id.* ¶ 61-62]. Emergency personnel arrived at about 3:23 p.m., and he was rushed to a nearby intensive care unit [*id.* ¶ 63]. However, blood transfusions could not overcome the organ damage that resulted from the delayed and inadequate response, and Mr. Jones succumbed to his injuries the following day [*id.* ¶ 63-70].

## STANDARD

After the pleadings are closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). A moving party is entitled to such a judgment when it appears "beyond doubt" that the nonmoving party "cannot prove any facts that would support his claim for relief." *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (quotation omitted).

This standard echoes an older one, and it continues to be repeated, though the law clarifies that a Rule 12(c) motion hinges on the same standard as a motion under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014); *see also Lanigan v. Vill. of East Hazel Crest*, 110 F.3d 467, 470 n.2 (7th Cir. 1997). And that standard has evolved. A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

The court is confined to the matters addressed in the pleadings and must review allegations in the light most favorable to the nonmoving party. *See Unite Here Loc. 1*, 862 F.3d at 595. The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).

## DISCUSSION

Officers Crockett, Welch, and Rice challenge two Fourteenth Amendment substantive due process claims: (1) deprivation of life without due process, on behalf of Juwan Jones, and (2) interference with the parent-child relationship, on behalf of Robin Jones. Ms. Jones did not file a response to their motion. The court addresses each claim in turn.

A. *The Deprivation of Life without Due Process Claim Doesn't Survive the Relevant Constitutional Standard.*

Ms. Jones argues the officers, in failing to protect her son from his assailant and timely respond to his attack, deprived him of his life without due process [16 ¶ 106-114]. This claim concerns Mr. Jones's treatment in prison by the officers. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). This is because "'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care

3

for himself, and at the same time fails to provide for his basic human needs—e.g., . . . medical care[] and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment[.]'" *Id.* at 32 (quoting *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 200 (1989)); *see, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 102-04 (1976) (describing the limitations placed on the government by the Eighth Amendment and finding a violation when there is "deliberate indifference to serious medical needs of prisoners").

"'[I]f a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Here, Ms. Jones brings a substantive due process claim of deprivation of life on behalf of her son based on the officers' failure to ensure his safety and provide timely medical treatment in prison. This claim is covered by the Eighth Amendment and must be analyzed accordingly.

However, this court already decided the amended complaint "failed to state a claim for deliberate indifference in violation of [Mr. Jones's] Eighth Amendment Rights." *See Jones v. Neal*, 2024 U.S. Dist. LEXIS 50265, 16 (N.D. Ind. Mar. 20, 2024). This is because it only alleges the officers "knew generally about the dangerous conditions in the prison and the potential for violence," *id.* at 15, and "knowledge of general risks of violence in a detention facility" is insufficient to support an Eighth Amendment claim, *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005) (quotation and brackets omitted). Rather, deliberate indifference requires that an individual "respond unreasonably to a substantial and known risk," *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 792 (7th Cir. 2003), and "Ms. Jones has not alleged that Officer Defendants actually knew of the specific risk to her son's life by his attacker and effectively condoned it," *Jones*, 2024 U.S. Dist. LEXIS 50265 at 16. Because Ms. Jones

4

pleads insufficient facts to support a plausible Eighth Amendment claim (recast by her as a Fourteenth Amendment claim), the court must enter judgment on the pleadings for the officers.

### B. *The Fourteenth Amendment Doesn't Countenance Ms. Jones's Claim for Deprivation of the Parent-Child Relationship.*

Ms. Jones also brings a claim for interference with the parent-child relationship in violation of her substantive due process rights under the Fourteenth Amendment [16 ¶ 119-126]. The law recognizes "violations of the due process liberty interest in the parent-child relationship," but these violations occur only when "the state took action specifically aimed at interfering with that relationship." *Russ v. Watts*, 414 F.3d 783, 788 (7th Cir. 2005); *see Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property."). As a result, there is no "constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action." *Russ*, 414 F.3d at 791.

The facts in *Russ* (though decided at summary judgment) offer some guidance as to what the law recognizes as a valid claim. Robert Russ led police on a car chase after they attempted to pull him over. *Id.* at 784. His car stopped after it collided with squad cars, police approached with weapons drawn, and Officer Watts fatally shot Mr. Russ. *Id.* Mr. Russ's parents sued Officer Watts for violating their rights to associate with their son under the due process clause of the Fourteenth Amendment. *Id.* at 785. The court of appeals rejected the claim, finding no "intentional action by the state to interfere with a familial relationship" because the parents did "not allege[] that [Officer] Watts shot [Mr.] Russ for the specific purpose of terminating [Mr.] Russ's relationship with his family." *Id.* at 790.

Here, Ms. Jones alleges these three officers incidentally caused Mr. Jones's death. She says they "were in and about the guards' station" nearby when conflict arose between Mr. Johnson and her son but "only sporadically observed the tier" [16 ¶ 30, 32]. They "willfully failed to monitor their guards' observation post on the tier," allowing her son's assailant to retrieve a weapon from his cell [*id.* ¶ 43].

5

When Mr. Johnson attacked, the officers "were either away from their post, asleep, [or] deliberately not paying attention" [*id.* ¶ 42]. As a result, they each "deliberately failed to act in critical, life-threatening circumstances that were the proximate cause of" Mr. Jones's death [*id.* ¶ 20-22]. In her words, this amounts to "deliberate indifference, negligence, recklessness, and flagrant failure to protect [her son] from obvious harm" [*id.* ¶ 1].

But nowhere does Ms. Jones allege that the officers behaved this way with "the specific purpose of terminating [her son's] relationship with his family," *Russ*, 414 F.3d at 790, or offer any facts that might give rise to that as a plausible conclusion. To be sure, there aren't even allegations the officers had specific knowledge that Mr. Johnson intended to attack Mr. Jones to support any inference of such intent. She could prove all her allegations but would remain unable to succeed on her interference claim because this "specific purpose" linchpin isn't plausibly included. Consequently, the officers are also entitled to judgment on this claim.

## CONCLUSION

For these reasons, the court GRANTS the motion by Officers Crockett, Welch, and Rice for judgment on the pleadings for claims four and six [41]. Only Ms. Jones's claims against the Nurse Defendants remain.

SO ORDERED.

November 21, 2024                               *s/ Damon R. Leichty*
                                                Judge, United States District Court